Judgment reversed and new <em>venire</em> awarded.

FRANKLIN COUNTY.

MAY TERM, 1884, No. 33.                              JUNE 6, 1884.

## Skinner *v.* Kroh.

1. E. K., a married woman, from her separate estate, loaned to her husband, C. K., certain moneys, taking his judgment note for the amount. Some time afterwards C. K., who was a farmer, and in debt to several persons, transferred to E. K., by bill of sale duly executed, and in the presence of two witnesses, at full valuations, certain horses, cows, farming implements, growing grain, and other goods, and had the sum credited by E. K., upon the note held by her. It had become generally known in the community in which the two had resided that they were about to remove to another State, the former home of E. K.; and four days after the sale to her, and before the time fixed upon for the removal, while husband and wife were still living together on the farm, no change having been made in the situation of the property transferred, and C. K. continuing his care and charge of it, it was attached under the act of 17 March, 1869, at the suit of the several creditors of C. K. Notice was given the sheriff of E. K.'s claim of ownership, bonds were taken by that officer from the attaching creditors, the suits prosecuted to judgment, executions issued, and the goods attached sold. Trespass being brought by E. K. against the sheriff, and the above facts appearing undisputed, *held,* that the sale to the wife by the husband was complete, and the delivery such as to enable her to maintain trespass against any one who should take away the goods so sold to her.

2. There being no dispute as to the *bona fides* of the debt or of

[Skinner *v.* Kroh.]

the sale, it was for the Court, and not for the jury, to determine the sufficiency of the evidence of possession between the husband and the wife.

3. *Semble*, that in order to protect the ownership of a wife in goods purchased in good faith from her husband as against creditors of the husband, it is not essentially necessary that the actual possession of the wife be to the entire exclusion of the husband; and, although she must have a right to the possession, she is not required to live separately from him.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Franklin County*.

Trespass, *de bonis asportatis*, by C. H. Kroh and Emma C. Kroh, his wife, in right of said Emma C. Kroh, against William C. Skinner, to recover damages for an alleged seizure and sale by the defendant of certain goods claimed by the plaintiff, Emma C. Kroh, to be her property. Pleas, not guilty, and two special pleas, (1,) that the goods and chattels seized and sold were not the goods and chattels of the plaintiff, Emma C. Kroh; and (2,) that at the time the defendant was the high sheriff of Franklin county, that he seized and carried away the goods and chattels in the declaration alleged as the property of C. H. Kroh, under and by virtue of certain writs of *fi. fa.*, issued out of the court of common pleas of Franklin county to him directed, at the suits of W. A. Smith, E. H. Hagerman, and Jeremiah Lesher; and that the defendant, in obedience to said writ, and by virtue thereof, seized and took the goods and chattels in the declaration mentioned as the goods and chattels of C. H. Kroh, whose property they were.

The following facts appeared at the trial:

The plaintiff, Emma C. Kroh, was a daughter of John Schnebly, deceased, and received from his estate a legacy of $3,500, $700 of which in stock and household goods was advanced her on her marriage and before her father's death, and the remainder, $2,800, paid her by his execu-tors, in two installments, the last one of $1,200 on December 1, 1880. All of this property, both goods and money, were loaned by her to her husband, who, on December 1, 1880, gave her his judgment note for $3,500.

C. H. Kroh was engaged in farming, and possessed a large stock of horses, cattle, farming implements, &c. On February 15, 1882, he held, on the farm where he lived, a public sale of this stock. The sale was advertised in six counties, and it was also made known that

Kroh was to give up farming and remove to Maryland on the following first of April.   About $2,000 worth of goods were disposed of at this sale, and with the proceeds Kroh paid some of his debts.   He retained, however, a consid-· erable proportion of his farm stock and goods, and for these, on March 20, 1882, he executed and delivered to his wife, in the presence of two witnesses, his bill of sale, with a schedule of the goods sold and the prices, the sum being $2,227.   This amount was credited at the same time by Mrs. Kroh, on her husband's note to her for $3,500.   The witnesses to the sale were neighbors, and the fact of the sale was communicated by C. H. Kroh to W. A. Smith, one of his creditors, two days afterwards, March 22d.   On March 23, 1882, C. H. Hagerman issued an attachment for $187 47.   On March 30, Jeremiah Lesher issued one for $187 80, and on March 31, W. A. Smith issued another for $107 78, all against C. H. Kroh, under the act of March 17, 1869.   On these writs the sheriff seized a part of the goods described in the bill of sale to Mrs. Kroh, the first levy being made March 24th. The sheriff was notified by Mrs. Kroh that the property levied on was hers, and not the property of C. H. Kroh, the defendant in the writs; bonds of indemnity were given to the sheriff by the plaintiffs in the writs, the suits prosecuted to judgment, *fi. fas.* issued, and the property claimed by Mrs. Kroh was sold.   The property described in the bill of sale to Mrs. Kroh consisted of horses, cattle, farming implements, grain in ground, and household goods; the portion seized under the attachments comprised the grain in ground, some horses, and one cow. It was in evidence that, from the date of the delivery to Mrs. Kroh of the bill of sale, although she regarded the property described in it as her own, and Mr. Kroh so regarded it, and they both testified that she took charge of it from the time of purchase, yet there was no change in the treatment, the handling, or the situation of it.

The Court charged the jury as follows:

After reciting the facts: ["All these things being so, and they are not disputed, you have a complete sale of the property to the wife at that time by the husband, and such a delivery as would pass the property at the time so as to enable her to maintain trespass against any one who would take away her goods.]   The counsel for the defendant has said in your hearing that they placed themselves upon the ground of legal fraud, and that they do not make any contest over those other matters—the *bona fides* of the debt and the *bona fides* of the sale.   The

[Skinner *v*. Kroh.]

real question, therefore, is simply that of legal fraud
*   *   *    whether or not there could be any change
of possession or the apparent control as between hus-
band and wife in a case of this kind.    *    *    *

With respect to articles of household and kitchen
furniture, it has been already decided by the Supreme
Court that the rule in Twyne's case is not applicable—
that concurrent possession by husband and wife in cases
of that kind is not a badge of fraud, because the husband
and wife must live together—he must sit at her table, and
sleep in her bed, and ride in her carriage.    *    *    *

But now in a case situated precisely as this, the rule is
not applicable for this reason : the husband has not only
the right to eat at his wife's table and stay in her house
using her goods, but such is the relation between hus-
band and wife that the wife has the right to have the ser-
vices, and care, and management, and supervision of her
husband with respect to her personal property.  She has the
right upon the sale to her of farm stock and implements,
to have her husband care for them, manage them, and
supervise them for her.   Now, his care, and supervision,
and management for her involves his continuing in the
apparent possession of them—in immediate connection
with them.    *    *    *    I am of opin-
ion, therefore, after the most mature consideration, that
under the circumstances, the admitted circumstances
of this case, (because there is no dispute about the facts,)
there was no change of possession at all, and it is upon
that basis I proceed.   I assume, taking this view of it,
that between the husband and wife there was a delivery
of the property, that is to say, there was a transfer of the
title or right in the property, and that is not a disputed
fact, and that follows from the mere fact of the sale, it
was not disputed.   Now, then, that being the case, I must
lay it down as the law that there was no necessity that
there should be a withdrawal by the husband from the
apparent ownership of the property to show that his
ownership apparently ceases.   I do not think that it is a
case in which the question must be left to the jury to say
whether or not there was all the change of possession
which, under the circumstances, could be reasonably re-
quired.   I think it is a case in which the Court is bound
to say, as matter of law, that the rule in Twyne's case is
not applicable.   Just as we would be required to say that
it is not applicable if it would be a case of household
goods, and I do instruct you, therefore, that it is not
necessary that there should be any change of possession

[Skinner *v.* Kroh.]

in this case, such as is required by the rule in Twyne's case. * * * [If, therefore, you find that the wife had this separate estate, that she had owing to her by her husband $3,500, and if the husband made a sale to her on the 20th of March, 1882, of this property, which the sheriff afterwards sold, then you ought to find for the plaintiff.]

The defendants submitted, *inter alia*, the following points :

*First.* To make the sale of the articles claimed by Mrs. Kroh valid as against the creditors of her husband, there must have been a delivery of the articles pursuant to the contract of sale, either actual or constructive, before the date of the attachment, and unless the jury shall find from the evidence that there was such a delivery, their verdict must be for the defendant. *Refused.*

*Second.* That to make the sale of the articles claimed by Mrs. Kroh valid against her husband's creditors, she must have assumed such control of them after the sale and before the attachment as would reasonably indicate to all concerned the fact of the change of ownership. And the question for the jury to decide is, did the plaintiff do all that she might reasonably be expected to do in this particular, having regard to the subject-matter of the sale and the situation or relation of the parties to it. *Refused.*

*Third.* Under the facts of this case as shown by the plaintiff's testimony, the sale of 20th March, 1882, by C. H. Kroh to his wife was incomplete and invalid as against the creditors of C. H. Kroh, and the verdict must be for defendant. *Refused.*

Verdict for the plaintiff for $802 77, and judgment thereon; whereupon the defendant took this writ, assigning for error, *inter alia*, the refusal of defendant's points, and the portions of the charge of the Court inclosed in brackets above.

*Orr & Gillan, Stenger & McKnight*, and *John Stewart* for the plaintiff in error.

To the general rules requiring actual delivery when the subject of the sale is capable of it, and constructive delivery where it is not, and exclusive possession in the vendee, it is contended that there is one exception clearly established by judicial decision, viz: where the transaction is between husband and wife. And this is, in brief, the question raised by this record. For if this sale can be sustained, then in no transaction between husband and wife is delivery of possession, whether actual, symbolical, constructive, or otherwise, essential, but as to them, the

[Skinner v. Kroh.]

rule is wholly and entirely inoperative, and the very relation in life in which the fraud the rules were intended to prevent is most frequently and easily practiced, is made secure, and open retreat for rascality and dishonesty. What is the wife's one day may be the husband's the next, the wife's again the next day following, and then again the husband's, and so on from day to day, changing ownership without the least notice or notoriety, to the distraction or confusion of the honest creditor in his vain attempt to realize his debt from the property which was the basis of the credit he gave.

In this case the property was, in itself, susceptible of actual delivery, and as between man and man nothing but an actual delivery would have met the requirements of the law. Again, there was no delivery of any kind whatever. The *indicia* of ownership remained just as before. Nothing was done to advertise the public of the sale. Something could have been done in this direction, and that something should have been done: McKibbin v. Martin, 14 P. F. Smith, 357. Delivery of possession is as necessary to support a sale between husband and wife as between strangers, and the sufficiency of the delivery is for the jury to determine.

*O. C. Bowers* and *W. U. Brewer* for the defendants in error.

The defendant, in the trial below, having voluntarily eliminated from the case all questions of actual fraud, and having rested on the ground of legal fraud, the Court was bound to decide the question and give a binding instruction to the jury, and it would have been clear error to have done otherwise: Dornick v. Reichenback, 10 S. & R., 90; Young v. McClure, 2 W. & S., 147; Cadbury v. Nolen, 5 Barr, 326; Milne v. Henry, 4 Wright, 358.

The wife of a debtor may be preferred in the same way as any other creditor if her claim be *bona fide:* Rose v. Latshaw, 9 Norris, 240.

The rule in Twyne's case is not applicable at all in the case of a sale by a husband to his wife. "Of such property possession is no test of title:" Gamber v. Gamber, 6 Harris, 363; Keeney v. Good, 9 Harris, 349; Larkin ?. McMullin, 13 Wr., 29.

OCTOBER 6TH, 1884.—PER CURIAM: This contention arises between a married woman and the creditors of her husband. It relates to personal property which she purchased from him. There is no allegation of any fraud in

[Hughes *v.* Smith *et al.*]

the sale to her.   She purchased in good faith, and paid a full value for the property.   There was an undoubted transfer of the title or right in the property to her.   The sole question is whether the transfer gave to her such a possession in law as to give her title against the creditors of her husband.

She and her husband were living together on a farm. The sale was made on the 20th of March.   They had arranged to relinquish farming and move to Maryland, her former home, and presumptively to take this property with her, on the 1st of April.   After this purchase, and prior to the 1st of April, the several creditors of her husband proceeded, by attachment and by executions, to seize the property.

There were no disputed facts.   The plaintiff in error rested his case on the ground of legal fraud.   It was, therefore, for the Court to determine.   The Court held the evidence of possession sufficient between husband and wife.

It is not essentially necessary that the actual possession of the wife be to the entire exclusion of the husband. She must have a right to the possession, but is not required to live separately from him in order to have such a possession as the law will protect: Keney *v.* Good, 9 Harris, 349 ; Gamber *v.* Gamber, 6 *Id.*, 363.

Regard must be had to the position of the parties, and no such change of possession is required as will defeat the fair and honest object of the parties : Crawford *v.* Davis, 3 Out., 578.

This sale was open and notorious.   It was in writing, and in the presence of two witnesses.   We discover no act thereafter indicating any denial of the wife's right of dominion or of possession.

Judgment affirmed.